IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TERRY ROBBINS,<br><br>　　　　Defendant. | Case No. CR11-0014<br><br>REPORT AND<br>RECOMMENDATION |

## TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   Does the Statute Authorize Money Judgments? . . . . . . . . . . . . . . . 6
      B.   Can a Forfeiture Judgment Enter for Defendant's *Distribution* of
           Marijuana? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.   Has the Government Proved that Defendant Received
           Proceeds from the Distribution of Marijuana in the Fall of 2010? . . . 9

V.    RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 9th day of August, 2011, this matter came on for hearing on the Government's Motion for Hearing to Determine Property Subject to Preliminary Order of Forfeiture (docket number 60) filed on July 14, 2011. The Government was represented by Assistant United States Attorney Martin J. McLaughlin. Defendant Terry Robbins appeared in court and was represented by his attorney, Mark C. Meyer.

## II. PROCEDURAL HISTORY

On January 11, 2011, Defendant Terry Robbins was charged by Indictment (docket number 2) with one count of manufacturing and attempting to manufacture marijuana, after having previously been convicted of a felony drug offense. Included in the indictment was a forfeiture allegation, advising Defendant that the Government was seeking forfeiture of "$30,000 as proceeds from the offense listed in Count 1 of this indictment."

On April 20, 2011, Defendant tendered a conditional plea of guilty to Count 1 of the indictment.[1] Defendant's plea of guilty was accepted by the district court on May 5, 2011. Sentencing has not yet been scheduled.

On July 14, 2011, the Government filed the instant motion, pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 32.2(b)(1)(B), requesting a hearing for the purpose of establishing a preliminary order of forfeiture. The Government asks that a money judgment enter against Defendant in the amount of $30,000. The motion was referred to the undersigned magistrate judge for a report and recommendation.

## III. RELEVANT FACTS

The facts underlying the instant charge are described in the Report and Recommendation (docket number 38) on Defendant's motion to suppress, and will not be recited in detail. Briefly stated, during the early morning hours of October 24, 2010, officers executed a search warrant on a residence owned by Defendant. As set forth in the Court's earlier Report and Recommendation, "[a] sophisticated marijuana growing operation was found in the basement. Officers found 297 marijuana plants, including 93 which were about six feet tall."[2] Officers also found 34 garbage bags containing marijuana plant residue.

---

[1] Defendant reserved his right to appeal any adverse decision on his motion to suppress (docket number 25). The motion to suppress was later denied by the district court.

[2] *See* Report and Recommendation (docket number 38) at 6.

2

At the instant hearing, Officer Matthew Denlinger of the Cedar Rapids Police Department testified regarding what was found at the scene. Denlinger described a large-scale marijuana growing operation in the basement of a two-story single-family residence. In one room of the basement, officers found fully-grown marijuana plants, which according to Denlinger were "pretty close to ready for cultivation." In a second room, officers found one large marijuana plant and "numerous other plants in various stages of growing from very small to medium in size."[3] Four or five planting trays were also found on a shelf under a grow light.

In a second floor bedroom, officers found a "drying tray," a scale, and boxes of gallon-size ziploc bags.[4] A drying tray is a large wooden frame with a screen. According to Officer Denlinger, freshly harvested marijuana is placed on the drying tray, with fans directed to the area, allowing air to pass above and below the marijuana.[5] After the marijuana has dried, it can be packaged for distribution without any molding. Denlinger testified that these items, together with the large number of plants found in the basement, show that the marijuana was grown for distribution, rather than personal use.

Found in the living room of the residence were plastic buckets. Some contained potting soil, while others were empty and had been stacked.[6] Nearby were garbage bags containing plant remnants. Also found on the first floor of the residence was a rubber storage tub containing remnants of marijuana that had been cultivated.[7] The "remnants" are those parts of the plant which remain after the "buds," which are suitable for sale, are

---

[3] *See* Government's Exhibit 14.

[4] Photographs of these items were introduced as Government's Exhibits 1-4.

[5] According to Officer Denlinger, the leafy material shown on the drying tray in Government's Exhibit 3 is scrap material or leaves, which would not be suitable for sale.

[6] Photographs of these items were introduced as Government's Exhibits 5 and 11. It should be noted that the pots and tubs depicted in Exhibits 6 and 13 contained the growing marijuana plants at the time the search was executed, prior to their removal by authorities.

[7] *See* Government's Exhibit 7.

removed. Altogether, 34 large garbage bags containing marijuana plant remnants were found in the garage and in the residence.[8]

Officer Denlinger conceded that it was not possible to determine when the marijuana plants represented by the remnants found at the residence had been harvested. Denlinger testified that the material found in the rubber storage tub found on the first floor "looks a little bit old" and he didn't "have any way to base how long that had been in there." Similarly, Denlinger testified that he had no way of telling how long the garbage bags containing marijuana plant remnants had been sitting there. On cross-examination, Denlinger testified that it appeared the plants had been dead "definitely less than a year, but beyond that I don't think I could narrow it down any further."

According to Officer Denlinger, each of the 34 bags would hold the remnants of five to ten marijuana plants. According to Denlinger, this is a "conservative" estimate, and the bags could represent more than ten plants each. Denlinger also testified that a healthy fully-grown marijuana plant will yield one pound of sellable product. In Cedar Rapids, a pound of poor quality marijuana will sell for $1,000, while a pound of good quality marijuana will sell for $3,500 to $6,000. Denlinger opined that the marijuana found in this case was of good quality and would sell for $3,500 per pound. On cross-examination, Officer Denlinger conceded that only female marijuana plants yield a product which is usable by humans. In addition, Denlinger conceded that not all marijuana plants will yield one pound of sellable product.

According to an "appraisal summary" introduced as Defendant's Exhibit A, Defendant purchased the real property on contract on July 30, 2010. Officer Denlinger testified, however, that the electric bill on the property was in the name of Ben Sufficool. Denlinger also testified that some time after this incident in October 2010, a marijuana growing operation was found at another residence and it is believed that "Sufficool and some other individuals were possibly related to that house also." Denlinger testified that

---

[8] *See* Government's Exhibits 8, 9, 10, and 12.

4

no one was at the house when the search was executed in the instant action. According to Denlinger, it did not look like anyone had lived there recently. No one had seen Defendant or his vehicle at the residence. The only fingerprint evidence linking Defendant to the scene was on a jar containing a growing chemical found in the basement.

There is no evidence that Defendant came into possession of a significant sum of money in September or October of 2010. Similarly, the Government did not offer any evidence that Defendant made any significant purchases during that time. There is no evidence that Defendant had any large amounts of cash or bank accounts which were acquired during that time.

## IV. DISCUSSION

In his resistance to the instant motion, Defendant makes three arguments. First, Defendant argues that notwithstanding the language found in Rule 32.2, the relevant statute – 21 U.S.C. § 853(a) – does not authorize money judgments. Second, Defendant argues that since he was charged with the *manufacture* of marijuana, forfeiture cannot be based on alleged proceeds from the *distribution* of marijuana. Third, Defendant argues that "there is no evidence that rises above pure speculation that Robbins derived any proceeds from growing marijuana in the fall of 2010."[9] Similarly, Defendant asserts that "the value of the still-growing marijuana in the residence may not be used as the basis for an order of forfeiture."[10]

In response, the Government concedes that a forfeiture judgment may not be entered based on marijuana which was seized at the residence. *See United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (holding a money judgment is not authorized "for the value of the property seized during the warrant."). Rather, the Government agrees that it bears the burden of proving, by a preponderance of the evidence, the amount of any

---

[9] *See* Defendant's Brief in Resistance (docket number 65-1) at 2.

[10] *Id.*

5

*proceeds* Defendant derived from the criminal activity described in the indictment in the fall of 2010 (the time period contained in the superseding indictment).[11] While it has no direct evidence that Defendant distributed marijuana during September or October 2010, the Government asserts that circumstantial evidence, consisting primarily of waste material found during the search, supports a finding that Defendant received at least $30,000 in proceeds from the distribution of marijuana "during the fall of 2010."

### A. Does the Statute Authorize Money Judgments?

Forfeiture judgments in criminal proceedings brought under the Controlled Substances Act are governed by 21 U.S.C. § 853. Among other things, the statute provides that following a conviction on a charge of manufacturing a controlled substance, "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" shall be forfeited. 21 U.S.C. § 853(a)(1). "Property" includes real property and "tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b)(2). Defendant argues that the statute only authorizes the forfeiture of designated property, and does not allow an *in personam* money judgment.

FEDERAL RULE OF CRIMINAL PROCEDURE 32.2 describes the procedure to be followed in entering a judgment of forfeiture in a criminal proceeding. The Rule clearly refers to the entry of a money judgment.[12] The advisory committee notes acknowledge that

---

[11] At the time of hearing, the parties discussed the "fall" as September and October (prior to the October 24 search). The Court takes judicial notice, however, that in 2010, the first official day of fall was September 22. Following the hearing, the Government filed a "notice of additional authority" (docket number 70), arguing that "the Government need not prove with certainty the exact date or time period of the offense charged, but it is sufficient if the evidence established the offense occurred with [*sic*] a reasonable time of the date or period of time alleged in the indictment." The Government does not suggest what period is reasonably included in the term "fall."

[12] *See, e.g.*, Rule 32.2(a) ("The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks."); 32.2(b)(1)(A) ("If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."); 32.2(b)(2)(A) ("If the court finds that the property
(continued...)

"[a] number of cases have approved use of money judgment forfeitures." However, the notes state further that "[t]he Committee takes no position on the correctness of those rulings."

Defendant candidly admits that he has no case authority to support his argument. That is, Defendant concedes that all of the appellate courts which have addressed this issue have concluded that a money judgment may be entered in appropriate cases. *See, e.g., United States v. Vampire Nation*, 451 F.3d 189, 198-201 (3d Cir. 2006) (authorizing an *in personam* forfeiture judgment in a mail fraud case); *United States v. Casey*, 444 F.3d 1071 (9th Cir. 2006) (holding that the district court erred by refusing to impose a money judgment for forfeiture of the proceeds from the sale of ecstasy); *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006) (ruling that a "criminal forfeiture may take several forms including an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense.") (quoting *United States v. Candelaria-Silva*, 266 F.3d 19, 42 (1st Cir. 1999)); *United States v. Baker*, 227 F.3d 955 (7th Cir. 2000); *United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003) (affirming the entry of criminal forfeiture money judgments).

In the recent case of *United States v. Gregoire*, the Eighth Circuit Court of Appeals affirmed the entry of a money judgment, finding the amount represented the proceeds from the defendant's mail fraud offense during the period alleged in the indictment. 638 F.3d at 972.[13] In an effort to discount *Gregoire*, Defendant in the instant action argues that the

---

[12](...continued)
is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria."); 32.2(b)(2)(C) ("If, before sentencing, the court cannot identify all the property subject to forfeiture or calculate the total amount of the money judgment, the court may enter a forfeiture order that . . . states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.").

[13] The Court agreed with the defendant, however, that "the remainder of the forfeiture judgment
(continued...)

Court did not address the threshold issue of whether the statute authorizes a money judgment. However, the language used by the Court belies that argument. According to the Court, "*[t]he statute authorized* and the indictment alleged the forfeiture of property 'derived from proceeds traceable to' the violations." *Id.* (emphasis added).

In summary, the appellate courts which have addressed this issue have unanimously concluded that 21 U.S.C. § 853(a) authorizes *in personam* money judgments against a defendant, representing proceeds derived from the criminal violation. FEDERAL RULE OF CRIMINAL PROCEDURE 32.2 sets forth a procedure for the entry of a money judgment in appropriate cases. I believe that Defendant's argument in this regard is without merit.[14]

### B. Can a Forfeiture Judgment Enter for Defendant's <u>Distribution</u> of Marijuana?

In the superseding indictment, Defendant was charged with knowingly and intentionally manufacturing, and attempting to manufacture, 100 or more marijuana plants. Without a plea agreement, Defendant entered a conditional plea of guilty to the charge. Defendant argues that an *in personam* forfeiture judgment may only enter for proceeds obtained by Defendant from the *manufacture* of marijuana, and that proceeds obtained from the *distribution* of marijuana, if any, are not subject to forfeiture.

Title 21 U.S.C. § 853(a)(1) provides that "[a]ny person convicted of a violation of this subchapter" shall forfeit to the United States "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." The forfeiture allegation found in the superseding indictment asks that Defendant forfeit "$30,000 as proceeds from the offense listed in Count 1 of this indictment." Accordingly, the issue becomes whether money received by Defendant from

---

[13](...continued)
must be reversed because a money judgment for the value of the property seized during the warrant searches was not authorized by either the statute or the indictment." *Gregoire*, 638 F.3d at 972.

[14] It should be noted that the same argument was raised, and rejected, in *United States v. Jamie Smith*, No. 6:09-cr-02023-LRR-10 (N.D. Iowa). At the instant hearing, the Court was advised that the matter is now on appeal to the Eighth Circuit Court of Appeals.

the distribution of marijuana constitutes proceeds derived indirectly from the offense charged in the superseding indictment.

Defendant cites no authority in support of his argument.[15] Defendant has admitted that he manufactured, or attempted to manufacture, marijuana. It is clear that the growing operation found at the residence owned by Defendant was not for personal use. It can be reasonably inferred that the product derived from a large-scale marijuana growing operation will be sold for money. Marijuana constitutes "proceeds" from the manufacture of marijuana. If the marijuana is sold, then money received from the sale is property "derived" from the proceeds. Therefore, money received by Defendant, if any, from the sale of the marijuana manufactured by him, constitutes, at least indirectly, proceeds derived from the offense set forth in the superseding indictment. 21 U.S.C. § 853(a)(1).

Accordingly, I believe that if a defendant is convicted of manufacturing marijuana, and if that defendant sold the marijuana, then the money received would constitute proceeds indirectly derived from the defendant's criminal activity. Defendant's argument in this regard is unpersuasive.

### C. Has the Government Proved that Defendant Received Proceeds from the Distribution of Marijuana in the Fall of 2010?

The final issue is a factual one. As set forth above, the Court may enter an *in personam* forfeiture judgment against Defendant for the proceeds of his criminal activity during the period alleged in the indictment. *Gregoire*, 638 F.3d at 972. The Government argues that circumstantial evidence supports a finding that Defendant received at least $30,000 from the distribution of marijuana during the fall of 2010. Defendant argues that the Government's claim is "pure speculation."

---

[15] Failure to brief an issue in more than a "perfunctory manner," allows a court to consider the issue waived. *Ramirez v. Debs-Elias*, 407 F.3d 444, 447, n.3 (1st Cir. 2005) (cited with approval in *United States v. Johnson*, 403 F. Supp. 2d 721, 764 (N.D. Iowa 2005)). *See also* Local Rule 7.d (requiring the movant to provide a brief containing "citations to the authorities upon which the moving party relies"); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived.").

Obviously, the evidence supports a finding that Defendant was growing marijuana in the residence owned by him. He has entered a plea of guilty to that offense. In addition, the evidence establishes that marijuana plants were dried, processed, weighed, and packaged at the residence. It can be reasonably inferred that the marijuana was then sold. According to Officer Denlinger, each of the 34 large garbage bags represented the remnants of at least five marijuana plants. That is, the garbage bags contained the residue of at least 170 plants. Even if only one-half of those plants yielded a product suitable for human use, the proceeds from the sale of the marijuana would far exceed the $30,000 sought by the Government as a forfeiture judgment in this case.

Defendant asserts that there is no evidence that the proceeds were received by him. Defendant introduced evidence that he purchased the real property on contract on July 30, 2010, just months prior to the October 24, 2010, search. Defendant also elicited testimony that the electric bill on the property was in the name of Ben Sufficool, who has apparently been implicated in a subsequent marijuana growing operation found at another residence. There is no evidence that Defendant was even at the residence in September or October 2010. Furthermore, there is no evidence that Defendant acquired large sums of money in the fall of 2010, or made any substantial purchases during that time.

Even if it can be reasonably inferred that Defendant processed and sold the marijuana represented by the plant remnants found at the scene, there is no evidence regarding *when* the sales were made or the proceeds received by Defendant. The Government concedes that it may only obtain a monetary forfeiture judgment for those proceeds received by Defendant during the time period described in the indictment. That is, the Government must prove, by a preponderance of the evidence, the proceeds received by Defendant in the fall of 2010.

I believe that the Government's evidence is lacking. While there is substantial evidence that marijuana was processed at the residence, there is no evidence that the processing (or subsequent sale) occurred in the fall of 2010. Officer Denlinger testified

that it appeared the plants had been dead "definitely less than a year, but beyond that I don't think I could narrow it down any further." In other words, while it is possible that Defendant processed and sold marijuana in September and October 2010, it is just as likely that the plant remnants had been in the house substantially before that time. In short, the Government cannot prove that Defendant received any proceeds from his illegal activity in the fall of 2010. I believe this lack of evidence precludes the entry of an *in personam* forfeiture judgment against Defendant.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Government's motion for a preliminary order of forfeiture.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 9, 2011.*

DATED this 11th day of August, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA